Dominic Savant and Catherine Savant, Plaintiffs-Appellees, v. Superior Coal Company, Defendant-Appellant.

Gen. No. 9,970.

Third District.

February 18, 1955.

Rehearing denied March 29, 1955.

Released for publication March 29, 1955.

Samuel O. Smith, Jr., of Carlinville, and Miles Gray, of Springfield, for appellant.

J. E. Wenzel, and D. A. McGrady, both of Gillespie, for appellees.

MR. JUSTICE HIBBS delivered the opinion of the court.

This is an appeal by Superior Coal Company, a corporation, defendant in the court below, from a judgment entered by the circuit court of Macoupin county

after jury verdict in favor of the plaintiffs, Dominic Savant and Catherine Savant.

The complaint, filed on January 17, 1952, alleged that on February 3, 1950 plaintiffs were the owners of a residence property in the city of Benld, Macoupin county, Illinois, which they acquired on June 28, 1944 and occupied thereafter; that on said last mentioned date the premises were improved with a substantial, well-constructed dwelling house with plastered walls and with basement and walks, and the premises were graded so that water falling thereon quickly flowed off and the basement was drained by tile with good fall connections; that prior to February 3, 1950 Superior Coal Company, owners of the coal underlying the surface and real estate adjacent thereto, removed the same and in so doing failed to leave sufficient support for the surface, and as a result the surface was caused to sink, drop and subside a distance of two or three feet; "that the subsidence . . . is continuing and will continue; that on December 29, 1951 the subsidence grew in strength in such manner that the entire home of the plaintiffs" was practically demolished. The defendant filed a motion to strike the complaint, alleging that it was defective in failing to specify the date of the first or original subsidence. On January 22, 1953 there was filed an amended complaint, in substance the same as the original, but alleging that plaintiffs' "real estate and real estate adjacent thereto . . . was on July 15, 1951 thereby caused to sink, drop and subside a distance of two or three feet, and that the subsidence . . . has continued from July 15, 1951 and that on December 29, 1951 the subsidence grew in strength" in such manner that their home was practically demolished. The defendant filed an answer denying in general terms the allegations of the amended complaint.

It is admitted by both parties that the cause was tried in April 1953 and in order to make the pleadings

112

conform to the evidence, plaintiffs obtained leave at the close of their case on April 23, 1953 to file a second amended complaint. This pleading, also similar to the original and the first amended complaint, alleged that on July 15, 1947 through December 29, 1951 the plaintiffs were the owners of the premises in question; that prior to July 15, 1947 the defendant being possessed of the coal underlying the surface removed the same, and in so doing failed to leave sufficient support for the surface, and as a result thereof said real estate and others adjacent thereto was on July 15, 1947 caused to sink, drop, and such subsidence "has continued from July 15, 1947 and that until and on December 29, 1951 the subsidence grew in strength in such manner" that the home of the plaintiff situated on said land was practically demolished. The jury disagreed and was discharged.

Later on September 15, 1953 defendant filed a motion to strike the second amended complaint, charging that the damages resulting from the subsidence in 1947 were barred by the statute of limitations. The motion to strike was overruled and a general answer to the second amended complaint was filed. Paragraph 11 thereof charged that the subsidence on July 15, 1947 and damage resulting therefrom was barred by the statute of limitations. A motion to strike that paragraph was sustained.

The first subsidence occurred, according to the evidence for plaintiff, on August 11, 1947 resulting in considerable damage to the four-room residence located on the property here involved. Defendant moved to strike this testimony on the theory that such subsidence was a separate cause of action from any other subsidence and was barred by the statute of limitations because occurring more than five years prior to the filing of the second amended complaint. In each instance the motion to strike was overruled.

113

The question here presented is whether under sec. 46 of the Civil Practice Act (par. 170, ch. 110, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 104.046]) the cause of action asserted in the second amended complaint "grew out of the same transaction or occurrence set up in the original complaint." If the answer is in the affirmative the second amended complaint relates back to the date of the filing of the original complaint.

Plaintiffs' complaint alleged ownership of the surface, the removal of the coal by the defendant leaving insufficient support and a subsidence by reason thereof resulting in damage to their property. It stated a cause of action but was defective in that it failed to set forth when the first subsidence occurred. The complaint charged that the real estate and real estate adjacent thereto was "thereby caused to sink, drop and subside" and the subsidence continued, and on "December 29, 1951 the subsidence grew in strength." It should have alleged when the first subsidence occurred and it was this defect which the defendant sought to reach by its motion to strike. If no motion had been made, the plaintiffs could have proven any and all subsidences that occurred to their premises within five years before filing of the complaint. (Wanless v. Peabody Coal Co., 294 Ill. App. 401 at p. 410.) The pleading in such case would have been good after verdict. (Gustafson v. Consumers Sales Agency, 414 Ill. 235, 241; Lasko v. Meier, 394 Ill. 71, 75.)

The complaint and the first and second amended complaints were each based upon a subsidence due to the removal of the coal by the defendant without leaving sufficient and adequate support for the surface. The cause of action, however, did not arise and the statute of limitations did not commence running until there was a subsidence. (Wanless v. Peabody Coal Co., 294 Ill. App. 401.)

The original complaint by charging the condition of the property before any subsidence occurred clearly

114

indicates an intention by the suit to recover damages to the property as the result of any and all subsidences that occurred prior to the commencement of the suit.

The second paragraph of sec. 46 of the Civil Practice Act provides as follows: "The cause of action, cross demand or defense set up in any amended pleading shall not be barred by, lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross demand interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted when such condition precedent has in fact been performed, and for the purpose of preserving as aforesaid such cause of action, cross demand or defense set up in such amended pleading, and for such purpose only, any such amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended."

This paragraph was considered at length in Metropolitan Trust Co. v. Bowman Dairy Co., 369 Ill. 222 and the court there say at p. 229: "The sole requirement of that paragraph is that the cause of action set up in the amendment grew out of the same transaction or occurrence set up in the original pleading. Briefly summarized, Sec. 46 permits any amendment of a pleading, filed in that time, after the time limited for commencing suit to set up a cause of action on any claim which was intended to be brought by the original pleading, provided, only, that it grew out of the same transaction or occurrence, and it is not necessary that

115

the original pleading technically state a cause of action, or that a cause of action set out in the amendment be substantially the same as any cause of action stated in the original pleading. The term 'same transaction or occurrence,' so used in the statute, means the same suit. These changes, together with the judicial construction of the prior statutes, evince the legislative intent to remedy the evils incident to the former legislation and to preserve causes of action against loss by reason of technical rules of pleading. This is manifest from the concluding language of Par. 2 which specifically declares the purpose of preserving the cause of action."

■ We believe, first, that the cause of action set up in the second amended complaint grew out of the same transaction or occurrence alleged in the original complaint. We further believe that in view of the allegations of such original complaint to the effect that the premises were in a good state of repair and condition at the time the subsidence occurred, they intended thereby to recover damages for all injury of the property caused by such condition to the time suit was instituted. The right, therefore, to file the second amended complaint and recover for damages occasioned on August 11, 1947 down to the time the suit was commenced comes clearly within the provisions of sec. 46 of the Civil Practice Act as construed by the Supreme Court in Metropolitan Trust Co. v. Bowman Dairy Co., supra.

■ Defendant, however, contends that each subsidence constitutes a separate cause of action for which a recovery may be had, that the subsidence which occurred on August 11, 1947 was a separate cause of action from any other subsidence for which a separate suit might be maintained and not having been declared on until more than five years had elapsed the cause of action was barred. In this connection it is necessary

116

to again note that the original complaint did not allege that the first subsidence occurred on December 29, 1951. It did allege without specifying a date that the plaintiffs' premises then in a good condition of repair were caused to sink, drop and subside, which continued and "on December 29, 1951 the subsidence grew in strength" in such manner that the home was damaged. The charge there made is of a continuing subsidence. Defendant's contention seems to be that all subsidences are separate and distinct and there cannot be a continuing one as alleged in the original complaint. That was a question for a jury to determine and not a matter of which the court may take judicial notice.

■■ It is true that a separate action may be maintained for each separate subsidence, but it does not follow that the plaintiff at his own peril must ascertain and determine what is a separate subsidence. He may bring an action to recover for all subsidences that may occur on his premises whether separate and distinct or continuing, occurring within five years before the commencement of the suit, provided they arise out of the same cause. In Morris v. Saline County Coal Co., 211 Ill. App. 178, an action was brought to recover for subsidence due to the removal of coal without leaving adequate surface support. The court say at p. 186: "We think it was perfectly proper for the defendant to show the damages done to his property from the time of the first subsidence up to the time of the commencement of the suit." To the same effect is Catlin Coal Co. v. Lloyd, 109 Ill. App. 122, where it is said at p. 125: "For the damages occasioned from subsidences of such parts of the land as had taken place at the time this suit was commenced, the appellee could in this action, recover, but not for such as might thereafter occur."

The cases of Nolan v. Sloan, 305 Ill. App. 71, Estate of Whipple, 285 Ill. App. 491, and Illinois Cent. R. Co. v. Cobb, Christy & Co., 64 Ill. 128, are not in point here.

In the Nolan case suit was brought on a promissory note against the defendants who were guarantors. After a motion to strike was allowed, plaintiffs sought by amendment to recover on the guaranty. It was held that the suit on the guaranty was a new cause of action and barred by the statute. In Estate of Whipple, supra, a claim was filed against the estate on interest notes. After the statute had run, the claim was amended to include the principal. In Illinois Cent. R. Co. v. Cobb, Christy & Co., supra, a suit was brought to recover damages for delay in the certain shipment of grain. After the statute had run, plaintiff attempted to amend the declaration by adding other shipments of grain. In Powers v. Bellows Falls Hydro-Electric Corp., 115 Vt. 243, 57 A.2d 114, the original complaint sought damages from overflow which occurred in March 1936. Three years later an amendment was filed seeking damages for overflow suffered since the dam was constructed in 1927.

The court did not err in denying a motion to strike the second amended complaint or in striking paragraph 11 of defendant's answer to the second amended complaint, or in admitting evidence of the subsidence occurring on August 11, 1947.

It is next contended that the court erred in allowing the witness, Worth, to testify on cross-examination as to certain writing blotted out on a portion of defendant's exhibit 3. The witness examined the plaintiffs' house at the request of the defendant in 1950 and prepared an estimate in his own handwriting of the cost of repairing the same. He was called as a witness by the defendant and testified on direct examination that he had experience in examining and repairing residences and buildings damaged by coal mining subsidences and knew the general characteristics thereof. He further said that, according to his experience with that subject, there was no damage to the plaintiffs' property typical of a coal mining subsidence. He further

118

testified as to the items set forth on defendant's exhibit 3 and the same was offered in evidence. On cross-examination it developed that the legend appearing at the top of the exhibit had been blacked out but the writing underneath was the witness's handwriting and he had there written, "Estimate on damage to residence caused by squeeze." General objections to this testimony were made by the defendant and overruled by the court.

In view of the direct testimony of the witness that there was no evidence in 1950 of a typical subsidence to the plaintiffs' property, it was competent to show by the exhibit that he then prepared he placed a legend thereon indicating that the damage to the residence was "caused by squeeze," a term commonly used in subsidence cases.

Defendant further contends that the verdict is contrary to the manifest weight of the evidence, for the reason that there is nothing in the record showing either directly or indirectly that the surface conditions of the property were typical of a subsidence due to the mining of the underlying coal.

The admitted fact in the case is that the coal was removed from beneath these premises sometime during the 1930's. There was proof of a subsidence and extensive damage to the house, to the walls thereof, the foundation, the basement and the sewer, that the rear of the lot and some property adjacent thereto had dropped a foot; that the back lawn previously was level but became cracked and uneven; that water that formerly ran off of the lot, after the alleged subsidence ran onto the lot. This proof was sufficient to make a prima facie case of subsidence due to the removal of coal. (Wilms v. Jess, 94 Ill. 464, 469; Morris v. Saline County Coal Co., 211 Ill. App. 178, 186; 58 C. J. S., sec. 278 (3) p. 789.)

The evidence for the defendant did not deny a subsidence but tended to show that it was not typical of

119

a coal mining subsidence. There was also some evidence indicating that the damage to the house may have been caused in part by a settling of the chimney. Defendant did not attempt to prove or show the cause of the damage to the sewer or subsidence and unevenness of the back yard.

In this state of the proofs the question as to the cause of the damage was essentially for the jury, and we are unable to say that its verdict is contrary to the manifest weight of the evidence.

The judgment of the circuit court of Macoupin county is affirmed.

Judgment affirmed.